**FILED**
JUN 27 2019 
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 5:19-cr-00225-AKK-SGC |
| | ) |
| DANIEL SEBASTIAN STEELE, | ) |
| Also Known as DANNY GORDON FANSLER | ) |

## PLEA AGREEMENT

The government and the defendant hereby acknowledge the following plea agreement in this case:

### PLEA

The defendant agrees to plead guilty to **COUNT TWO** of the Indictment filed in the above numbered and captioned matter. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to move to dismiss COUNT ONE at the time of the defendant's sentencing hearing and to recommend the disposition specified below, subject to the conditions in paragraphs **VII** and **VIII**.



Defendant's Initials D.S.

# TERMS OF THE AGREEMENT

## I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for the crime of Possession of a Machine Gun, in violation of Title 18, United States Code, Section 922(o), as charged in COUNT TWO, is:

    a.    Imprisonment for not more than 10 years;

    b.    A fine of not more than $250,000, or

    c.    Both (a and b);

    d.    Supervised release of not more than 3 years; and

    e.    Special Assessment Fee of $100.

## II. FACTUAL BASIS FOR PLEA

**The Government is prepared to prove, at a minimum, the following facts if this matter were to go to trial:**

On March 22, 2019, a concerned citizen advised law enforcement that he/she worked with the defendant and that the defendant was attempting to sell firearms, including a possible machine gun. Local law enforcement contacted ATF, and Senior Special Agent James Grider travelled to DeKalb County to investigate.

SA Grider met with the citizen and local law enforcement. The citizen said that the defendant had a machine gun in his vehicle. The defendant told him / her that the defendant pieced together the firearm from various parts. He/she said that he/she saw the defendant fire the firearm in fully automatic mode several years

Defendant's Initials ___ ___.

ago. He/she said that he/she did not know if the defendant wanted to sell this machine gun. He/she said that the defendant, who needed money, was offering to sell a variety of firearms to his co-workers. This was of concern to law enforcement because some of the defendant's co-workers were convicted felons. The defendant also told the citizen that he wanted to sell his .50 caliber machine gun and was hoping to get $15,000 for that firearm. The citizen said that he/she had fired that firearm with the defendant several years ago.

Based on concerns that the defendant might be in the process of distributing firearms or could do so, an Assistant District Attorney sent members of the DeKalb County Drug Task Force to obtain a search warrant. SA Grider and the Chief of the Geraldine Police Department also went to the defendant's workplace to make contact with the defendant. The defendant was patted down and two knives were recovered from his pockets. Agents advised the defendant that they were in the process of obtaining a search warrant and accompanied him to his vehicle. SA Grider told the defendant that he was not under arrest. During the walk to the defendant's vehicle, SA Grider called other agents and learned that the search warrant had not yet been signed. SA Grider advised the defendant of this fact, and the defendant was asked for consent to search his vehicle. The defendant consented and offered the keys to SA Grider. SA Grider advised the defendant of his *Miranda* rights, which the defendant waived in writing, and the defendant subsequently signed a consent to search form for his truck. In the truck, SA Grider found two receipts for a storage facility which was consistent with what the citizen had said about where the defendant was keeping the .50 caliber machine gun, other firearms, loaded magazines, and speed loaders. In the locked toolbox of the truck, SA Grider found a Rock River, model LAR-15 5.56 machine gun which was also a short-barreled rifle.

SA Grider confronted the defendant with the discovery of the machine gun. The defendant said that he knew it was a machine gun and that it was not registered. The defendant said that he had previously fired the machine gun in fully automatic mode. Based on what had been discovered thus far in the investigation, SA Grider told the defendant that he believed the defendant probably had other firearms. The defendant said that he did have an "antique" .50 caliber gun and it was in his storage unit. SA Grider asked the defendant if this gun would fire on fully automatic, and the defendant said, "As far as I know, no."

Defendant's Initials _____

After again being advised that he was not under arrest, the defendant agreed to a search of his storage unit. He said that the locks on the unit might have been changed because he was behind on the rent. The defendant agreed that DA Investigator Hill could drive his truck to the police department for safekeeping and rode with agents to the storage unit in Ft. Payne. The defendant was again advised of his *Miranda* rights and, on arrival at the storage unit, signed a consent to search form for the unit. SA Grider found that the lock appeared intact and used the defendant's key to open the unit.

The defendant directed the agents to a box which was under several items in the unit. Inside, SA Grider found a Colt, Browning model .50 caliber machine gun. He also found the rack on which the machine gun stood, a stand alone ammunition holder, and an ammunition box which contained a loaded belt for the machine gun with approximately 100 rounds in it.

At the location of the unit, the defendant provided a statement which was reduced to writing. He said that he obtained the Rock River machine gun approximately 12 years ago. He said that he fired the machine gun in fully automatic mode several times. He said that he purchased the .50 caliber machine gun approximately 10 years ago. He said that the person he bought it from said that he was allowed to take it off a U.S. vessel by the captain at the end of World War II. The defendant said that he had fired this machine gun in fully automatic mode several times. The defendant said that he knew that neither firearm was registered with ATF and that neither was registered to him. He said that he knew that he could not possess a machine gun and that he was in fear of being caught with the .50 caliber machine gun.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the**



Defendant's Initials

**defendant and/or any co-conspirators may have committed.**

*Daniel Sebastian Steele*

**DANIEL SEBASTIAN STEELE**

## III. RECOMMENDED SENTENCE

Subject to the limitations in paragraph **VII** regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend the following disposition:

(a)  That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

(b)  That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the low end of the advisory United States Sentencing Guideline range as that range is determined by the Court on the date that the sentence is pronounced;

(c)  That following the said term of imprisonment, the defendant be placed on supervised release for a term to be determined by the Court in its discretion, subject to the standard conditions of

Defendant's Initials DS

    supervised release as set forth in U.S.S.G. § 5D1.3;

(d) That the defendant be required to pay a fine in accordance with the sentencing guidelines, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release; and

(e) That the defendant pay a special assessment fee of $100, said amount due and owing as of the date sentence is pronounced.

## IV. <u>WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF</u>

**In consideration of the recommended disposition of this case, I, DANIEL SEBASTIAN STEELE, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.**

Defendant's Initials D.S.

The defendant reserves the right to contest in an appeal or post-conviction proceeding the following:

(a) Any sentence imposed in excess of the applicable statutory maximum sentence(s);

(b) Any sentence imposed in excess of the guideline sentencing range determined by the Court at the time sentence is imposed; and

(c) Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, DANIEL SEBASTIAN STEELE, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs and that I am knowingly and voluntarily entering into this waiver.

_____
DANIEL SEBASTIAN STEELE

Defendant's Initials D.S.

## V. UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant that, in light of the United States Supreme Court's decision in United States v. Booker, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON THE COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant, that any sentence recommended by the government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, the defendant does not have the right to withdraw the guilty plea.

Defendant's Initials

## VII. VOIDING OF AGREEMENT

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to the charges, this agreement will become NULL and VOID. In that event, the Government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## VIII. SUBSEQUENT CONDUCT

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraph III of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in his sole discretion.**

## IX. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT**

Defendant's Initials: X.S.

**BIND** any other United States Attorney in any other district or any other state or local authority.

## X. COLLECTION OF FINANCIAL OBLIGATIONS

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. The defendant also will promptly submit a completed financial statement to the United States Attorney's Office in a form that it provides and as it directs. The defendant also agrees that the defendant's financial statement and disclosures will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligations imposed by the Court.

## XI. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The

Defendant's Initials ___

defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XII. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under

Defendant's Initials ⟋⟋

federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## XIII. DEFENDANT'S UNDERSTANDING

I have read and understand the provisions of this agreement consisting of fourteen (14) pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

Defendant's Initials

NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here (Write "N/A" if none):

_blood pressure medication; over-the-counter pain medication_

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

| | |
|---|---|
| 6/12/2019 | _Daniel Sebastian Steele_ |
| DATE | DANIEL SEBASTIAN STEELE |
| | Defendant |

## XIV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my

Defendant's Initials _DS_

client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

6/26/19
DATE

DEANNA OSWALD, ESQ.
Defendant's Counsel

## XV. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

JAY E. TOWN
United States Attorney

DATE

RUSSELL E. PENFIELD
Assistant United States Attorney

Defendant's Initials